UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-21976-Civ-Ungaro/Torres

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES
(AFSCME) COUNCIL 79,

      Plaintiff,

vs.

RICK SCOTT, in his official capacity as
Governor of the State of Florida,

      Defendant.

_____/

```
FILED by _ATS_ D.C.

OCT 17 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI
```

## ACLU OF FLORIDA, INC. AND ACLU OF FLORIDA FOUNDATION, INC.'S EMERGENCY MOTION TO QUASH SUBPOENAS

**I.    Introduction**

    The American Civil Liberties Union of Florida, Inc., and the American Civil Liberties

Union Foundation of Florida, Inc., through counsel, move to quash two subpoenas issued by

Defendant to the "ACLU of Florida"[1] and for a protective order to prevent (1) document

production by the "ACLU of Florida," due on October 26, 2011, and (2) the deposition of an

"ACLU of Florida" representative, scheduled for November 4, 2011, concerning the ACLU's

"knowledge and position" on drug testing by public and private employers, public opinion of

employer drug testing, and the effects of workplace drug use. The ACLU of Florida, Inc. and the

ACLU Foundation of Florida, Inc. (collectively, "ACLU-FL") object to these subpoenas because

_____

[1]    Because Defendant's subpoenas are unclear as to the entity being named (*i.e.*, there is no legal entity known as the "ACLU of Florida"), both the ACLU of Florida, Inc., a 501(c)(4) organization which is the national ACLU affiliate in Florida, and the ACLU Foundation of Florida, Inc., a 501(c)(3) organization primarily responsible for the ACLU litigation in Florida and counsel for Plaintiff in this case, are responding to the subpoenas. *See* Declaration of Randall Marshall, attached as Exhibit 1.

they impose an undue burden under Rule 26(c)(1) and Rule 45(c) of the Federal Rules of Civil Procedure and are simply irrelevant to the legal questions presented in this litigation.

The ACLU-FL is an outspoken opponent of Governor Scott's policies and legislative agenda, consistently asserting that many of the policies he advances violate the civil rights and civil liberties of Floridians. These subpoenas from the Governor directed to the ACLU-FL are unreasonable, oppressive, and constitute pure harassment. The Governor's subpoenas seek irrelevant information, are overbroad, seek to conscript ACLU-FL, a nonparty, as an unretained expert, and seek to depose opposing counsel, implicating work product and attorney-client privileges.

## II.    Procedural History

1.     On May 31, 2011, Plaintiff AFSCME filed a complaint against Defendant Governor Rick Scott alleging that his Executive Order 11-58 mandating suspicionless drug testing of all executive agency employees, without limiting the testing to those in safety-sensitive positions, violates the Fourth Amendment. DE 1.

2.     On July 7, 2011, Defendant filed his answer denying this central allegation and asserting affirmative defenses. DE 9.

3.     Plaintiff and Defendant exchanged initial disclosures listing individuals likely to have discoverable information and describing documents that the parties might use in support of their claims and defenses. The Governor's disclosures did not list ACLU-FL or any of its staff members as individuals likely to have discoverable information. DE 10,[2] Exhibit 2 (Governor's Amended Initial Disclosures).

---

[2]     DE 10 was the Governor's initial disclosures mistakenly labeled "Plaintiff's Initial Disclosures." These initial disclosures were mistakenly sent to the Court and were then stricken by Defendant. DE 11.

4.      On August 25, 2011, this Court issued an amended scheduling order requiring all discovery, including expert discovery be completed by November 15, 2011. DE 14. To date, neither party has disclosed any expert witnesses, including any witnesses offering testimony regarding the rates of workplace drug testing, the effects of workplace drug use, or public opinion of workplace drug testing.

5.      Plaintiff served discovery requests on August 29, 2011, including requests for production, interrogatories, and requests for admission on Defendant. That same day, Plaintiff also issued deposition notices for seven of the agency heads affected by the executive order. Plaintiff's counsel informed Defendant's counsel that the dates of the depositions were flexible and that he would coordinate them with Defendant's counsel.

6.      Defendant Governor served discovery requests on Plaintiff AFSCME on October 3, 2011, including interrogatories that inquire into Plaintiff's knowledge of the prevalence of drug testing in the private sector, Exhibit 3, requests for admission regarding drug screening of employees in the private and public sectors, Exhibit 4, and a request for production that seeks "all documents in Plaintiff's possession, custody or control that are related to drug testing by private sector employees in Florida or nationally, including but not limited to any studies, statistics, policy briefs, policy proposals, public papers, position papers, emails, press releases, electronic documents, or letters," "documents related to public approval or disapproval of drug testing by employers (public or private) including but not limited to public opinion polls," and "studies, tabulations, or counts of the number and/or percentage of employers (public or private) who engage in drug testing (either pre-employment or during employment)." Exhibit 5. In his Corrected Initial Disclosures, the Governor lists seventeen (17) individuals (but not the ACLU-FL) who have "information and/or documents related to ... drug-testing policies ... and/or

3

statistics related to drug testing." Exhibit 2.

One week later, on October 10, 2011, the Governor served two nonparty subpoenas on the "ACLU of Florida." Defendant made no attempt to clear the deposition or production dates with the ACLU Foundation of Florida, Inc., which is counsel for Plaintiff in this case.

7.     One subpoena seeks the deposition of a representative of ACLU-FL on the following topics:

> (1)     The ACLU of Florida's knowledge and position on the prevalence of drug testing by either private or public employers in Florida and nationwide.
> (2)     The ACLU of Florida's knowledge and position on the prevalence of drug use in Florida and nationwide.
> (3)     The ACLU of Florida's knowledge and position on public approval or disapproval of drug testing by employers in Florida and nationwide.
> (4)     The ACLU of Florida's knowledge and position on the effects of drug use in the workplace.
> (5)     The authenticity of documents related to drug testing in the possession, custody, or control of the ACLU of Florida.

Subpoena to Testify issued to ACLU of Florida, attached as Exhibit 6.

8.     The second subpoena seeks documents from ACLU-FL in the following categories:

> (1)     All documents pertaining to drug testing by private-sector employers in Florida or nationally, including, but not limited to, all studies, statistics, policy briefs, policy proposals, polls, polling data, legislative briefs, legislative proposals, position papers, "white papers," emails, press releases, electronic documents, letters, and correspondence.
> (2)     All documents pertaining to drug testing by public employers in Florida or nationally, including, but not limited to, all studies, statistics, policy briefs, policy proposals, polls, polling data, legislative briefs, legislative proposals, position papers, "white papers," emails, press releases, electronic documents, letters, and correspondence.
> (3)     All documents pertaining to public approval or disapproval of drug testing by public or private employers, including, but not limited to, all public opinion polls.
> (4)     All documents pertaining to studies, tabulations, or counts of the number, amount, and/or percentage of public or private employers that drug test their employees, regardless of whether such drug testing occurs prior to or during employment.

Subpoena to Produce Documents issued to "ACLU of Florida," attached as Exhibit 7.

### III.   Memorandum of Law

ACLU-FL objects to the subpoenas because they impose an undue burden, in that they seek irrelevant information from a nonparty, which has also been sought from Plaintiff,[3] and are overbroad; because they are intended to harass and vex the ACLU-FL; because they seek to benefit from ACLU-FL's expertise on the issue of suspicionless drug testing without retaining the organizations as experts; and finally, because they seek discovery from opposing counsel without any justification.

### A.   The Subpoenas Impose an Undue Burden on ACLU-FL Because They Seek Irrelevant Information, Are Overbroad, and Are Directed to a Nonparty.

Under Rule 45, which governs subpoenas to nonparties, the court "must quash or modify a subpoena that [among other reasons] subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). Similarly, under Rule 26(c)(1), the court may, upon a showing of "good cause ... issue an order to protect a ... person from annoyance, embarrassment, oppression or undue burden or expense."

"Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citations omitted). The Governor can advance no "need" to depose a representative of the ACLU-FL, and no need to subject the ACLU-FL to such a burdensome, irrelevant production request.

"Whether a subpoena imposes upon a witness an undue burden depends upon such

---

[3]     Proper responses, including objections to those discovery requests, are forthcoming.

factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. In addition, the status of a witness as a non-party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); *see also United Techs. Corp. v. Mazer*, No. 05-80980-Civ, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007) (same); *Wyoming v. USDA*, 208 F.R.D. 449, 452-53, 454 (D.D.C. 2002) (denying motion to compel production of documents from nonparty and granting nonparties' motion to quash subpoenas where documents were irrelevant to party's claim, more easily obtainable from another source, and discovery was "unduly burdensome considering the non-party status of the witnesses"); *Trunk v. San Diego*, Nos. 06-cv-1597 & 06-cv-1728, 2007 WL 3001679, at *6 (S.D. Cal. Oct. 11, 2007) ("[T]he Court must be particularly vigilant to accord non-party activists . . . the broad protection . . . they are entitled to, to prevent the possible misuse of deposition subpoenas as tools of oppression, intimidation, or harassment.").

A Rule 45 subpoena must also meet the relevance requirements of Rule 26, so that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case ... and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). *See Stern v. O'Quinn*, 253 F.R.D. 663, 670 (S.D. Fla. 2008) (explaining that party seeking discovery must "first demonstrate the relevance of the information sought" because "relevance serves as the gate through which all discovery requests must pass"); *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp.*, No. 10-80241-Civ, 2011 WL 465507, at *5 (S.D. Fla. Feb. 4, 2011) (noting that court must first determine relevance of information sought in deciding challenge to nonparty subpoena). "Although the scope of discovery is broad, it is not

boundless ... . Where a party has subpoenaed a non-party, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011). "Obviously, if the sought after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed ... would be by definition undue." *Belinda K. v. Baldovinos*, No. C10-02507, 2011 WL 3740835, at *2 n.7 (N.D. Cal. Aug. 23, 2011); *see also Great Lakes*, 2011 WL 465507 at *5-6 (noting that movant is generally required to make a specific factual showing of harm in order to obtain a protective order, but holding that, even in the absence of such a showing, the irrelevance and overbreadth of the discovery requests posed an undue burden warranting a protective order). All of the factors—including relevance, need for information, breadth of requests, time period covered, particularity of requests, burden imposed, and nonparty status—indicate that Defendant's subpoenas impose an undue burden upon ACLU-FL and should be quashed. *See Concord Boat Corp.*, 169 F.R.D. at 49.

The Governor's subpoenas cannot overcome even the first hurdle of relevance because they are not reasonably calculated to lead to the discovery of admissible evidence. Irrelevant discovery requests are, by definition, an undue burden. *See Belinda K.*, 2011 WL 3740835, at *2 n.7. The deposition subpoena focusing on ACLU-FL's "knowledge and position" on employer drug testing, the prevalence of drug use, public opinion polls, and the effects of workplace drug use, as well as the document production subpoena seeking documents in ACLU-FL's possession pertaining to employer drug testing and public opinion polls are simply not germane to the claims or defenses in this case. Whatever the ACLU-FL knows or believes about the frequency or propriety of employer drug testing or drug use simply has no relevance to the constitutional claim at issue—whether suspicionless drug testing of state employees in executive agencies is

permissible under the Fourth Amendment. Neither does ACLU-FL's knowledge or belief have any bearing on the Defendant's affirmative defenses – demurrer, sovereign immunity, failure to join necessary parties, and lack of standing.

Similarly, the Governor has no need to subpoena these documents and information from ACLU-FL, as he and his counsel are perfectly capable of performing their own research – to the extent that they believe such information is relevant to their defense – into how widely employers in the public and private sector drug test their employees and what public opinion polls suggest about public approval or disapproval of this testing.[4] Seventeen individuals with information or documents on drug-testing policies and statistics related to drug testing are named in the Governor's Rule 26(a) disclosures. Exhibit 2. ACLU-FL staff, some of whom serve as Plaintiff's counsel in this case, should not have to do the Governor's research for him.

Further, the document requests, which have no time limitation, are exceedingly broad and burdensome. They, along with the deposition subpoena, seek documents and information related to drug testing by private sector employers and public opinion polls on drug testing – neither of which is at issue in this case. Additionally, the document subpoena asks for "studies, statistics, policy briefs, policy proposals, polls, polling data, legislative briefs, legislative proposals, position papers, 'white papers,' emails, press releases, electronic documents, letters, and correspondence." As the supporting affidavit demonstrates, the universe of information covered by these requests, with no time limitations, is boundless and would require in-depth searches for emails and documents in the ACLU-FL's Miami office, its regional offices in Jacksonville,

---

[4]    Indeed, in another case litigated by Defendant's counsel on the issue of drug testing of applicants for temporary cash assistance, *Lebron v. Dept. of Children & Families*, No. 6:11-cv-1473 (M.D. Fla.) (filed Sept. 6, 2011), Defendant's counsel attached numerous public policy studies and opinion polls about drug use and drug testing to its pleadings, suggesting that Defendant's counsel is in no way handicapped from conducting his own research into these issues. *See* Exhibit 1 at ¶ 10.

Tampa, and Pensacola, which maintain their own filing and document storage systems, and in its eighteen volunteer chapters across the state ... Many of the volunteer chapters are "housed" in members' homes or offices, and meet in libraries, churches, or restaurants. Exhibit 1 at ¶ ¶ 15-16.

The searches for documents (both hard copy and email) that may be responsive to the Governor's subpoena would require retrieval of millions of emails sent by the Affiliate and its Communications Department over the years to media, ACLU-FL members and supporters, to the 18 chapters throughout Florida, to our National office, to other Affiliates throughout the country, as well as emails sent internally between Foundation lawyers, the Communications Department, and between Foundation lawyers, cooperating ACLU co-counsel, and other advocacy groups involved in litigation strategy. *Id.* at ¶¶ 17-22. On a single day, which was a quiet day, the Communications Department generated 92 emails relating to drug testing (incoming and responsive). *Id.* at ¶ 21.

Additionally, even if it were possible to produce responsive emails and other documents, given the burdens such production would entail, the documents themselves would reveal the identities of members and supporters of the ACLU-FL. That information cannot be compelled by the Governor, as "compelled disclosure of affiliation with groups engaged in advocacy may constitute a[n] effective ... restraint on freedom of association ... ." *NAACP v. Alabama,* 357 U.S. 449, 462 (1958). The production would "entail[] the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association," and potentially subject them to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* Compelled disclosure could induce members to withdraw from membership and deter others from joining. *Id.* at 463. And redacting names from millions of individual emails and other correspondence would be even more burdensome than producing

them in the first instance.

Furthermore, hard copy documents that may be responsive to the Governor's subpoena (perhaps including policy papers, studies, and law review articles) are in file cabinets throughout our Miami and regional offices and in storage, in hundreds of unsorted and un-catalogued boxes that would have to be retrieved from the storage vendor, brought to the Miami office, at substantial cost, approximately $3,000, *id*. at ¶ 27, and examined box by box to locate materials that the Governor has subpoenaed. Examination of hundreds of boxes to search for irrelevant documents that the Governor has subpoenaed would consume at least two employees' full-time attention, over two weeks, and would severely disrupt the operation of our office, which has only one administrative assistant for the Affiliate administration, and one legal assistant for the Foundation. *Id*. at ¶ ¶ 28-29.  In order for Mr. Marshall to prepare for his deposition, he would have to first familiarize himself with potentially thousands, if not millions of documents that might be tangentially responsive to the Governor's request, and would bring his work as Legal Director to a halt. *Id*. at ¶¶ 22-24.

The financial expense and diversion of staff time away from ACLU-FL's core mission in order to respond to the Governor's subpoenas are particularly unreasonable given ACLU-FL's status as a nonparty and as opposing counsel in this case. *See Cusamano*, 162 F.3d at 717. Given the irrelevance and overbreadth of the documents and information sought, the fact that Defendant could much more easily compile his own documents and information on the specified topics,[5] and ACLU-FL's status as a nonparty in this case, the subpoenas impose an undue burden on ACLU-FL and should be quashed.

---

[5]      Surely the Governor conducted some investigation and research before issuing Executive Order 11-58.

**B. The Subpoenas Require Disclosure of ACLU-FL's Opinion and Information as a Nontestifying Expert Without Any Showing of Substantial Need for the Information or Assurance of Reasonable Compensation.**

Under Rule 45(c)(3)(B)(ii), if a subpoena "requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, ... the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena ... ." The court may also order the expert to comply with the subpoena if the party issuing the subpoena shows "a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated." *Id.* As the Advisory Committee Notes explain, this rule seeks to protect the intellectual property of unretained experts who are denied the opportunity to bargain for their services. Fed. R. Civ. P. 45 advisory committee's note, 1991 amend., subdiv. (c). As the court explained in *Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*, No. Civ 05-380, 2007 WL 1306736 (D.N.M. Feb. 16, 2007), an expert's opinion or information resulting from her "study" includes any research-based study in the past or present including preparation for the expert's day-to-day employment. *Id.* at *6.

To the extent that the Governor seeks documents and opinions on the issue of employer drug testing from ACLU-FL because of the organizations' history of advocacy about, and litigation involving suspicionless drug testing in the workplace and consequent expertise on the issue, he has failed to meet the high threshold to obtain discovery from an unretained expert. None of the discovery requests seek information describing specific events at issue in this case, and none of the information sought results from ACLU-FL's study at the request of a party in this case. Rather, the Governor seeks information resulting from ACLU-FL's preparation for its

day-to-day work. *See Chavez*, 2007 WL 1306736, at *6. Further, as discussed earlier, Defendant has made no showing of substantial need for the opinions or information in the possession of ACLU-FL, given his and his counsel's own ability to research the prevalence of employer drug testing, employee drug use, and opinion polls about employer drug testing. Additionally, Defendant has made no assurances that he will reasonably compensate ACLU-FL for its time. The Governor should not be allowed to conscript ACLU-FL into providing him with the benefits of ACLU-FL's work without allowing the organizations to charge reasonable rates for their time.

Furthermore, the information that the Governor seeks by the two subpoenas is virtually identical to the information sought in discovery from Plaintiff via interrogatories, requests for production, and requests for admissions. Exhibits 3-5. The Governor has also listed seventeen individuals who have information about drug-testing policies and statistics related to drug testing. Exhibit 2. Rules 26(b)(1) and 45 permit this Court to relieve the ACLU-FL from the Governor's subpoenas if the discovery sought is "unreasonably duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2452 (2d ed. 1987).

The duplicative nature of the information sought is yet another factor that weighs in favor of the ACLU-FL's motion to quash. *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 542 (4th Cir. 2004) (affirming lower court's denial of motion to enforce non-party subpoena where moving party had access to same information through discovery from opposing party); *Precourt v. Fairbank Reconstruction Corp.*, No. 10-mc-130, 2011 WL 1753985, at *4 (D.S.D. May 5, 2011) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."); *In re Cantrell*, No. 09–mc–0158–

12

CV–W–GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) (quashing a nonparty document subpoena because a party in the action had the information).

### C. The Subpoenas Seek Discovery from Opposing Counsel Without Any Showing that the Information Is Otherwise Unobtainable, Relevant, and Crucial to Defendant's Case.

To the extent that the subpoenas seek to depose Plaintiff's counsel and seek to go through the files of Plaintiff's counsel, ACLU-FL notes that such requests are disfavored. "Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring). Although Rule 30(a) of the Federal Rules of Civil Procedure provides that "a party may, by oral questions, depose any person," both the attorney client privilege and the work-product doctrine may be jeopardized when an attorney deposes his or her adversary. The ACLU Foundation of Florida, Inc.'s role in this case is counsel of record to AFSCME, the plaintiff. If clients fear that their counsel may be deposed and forced to answer questions about the case, a chilling effect on clients' candor with counsel may result. Similarly, knowing that they eventually may be deposed about their knowledge of documents and other facts connected with a case may lead attorneys to shield themselves from relevant facts, thereby resulting in less effective representation. *See West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301 (S.D. Fla. 1990).

Opposing counsel may be deposed only upon a showing of substantial need and only after alternative discovery avenues have been exhausted or proven impracticable. *In re County of Orange*, 208 B.R. 117, 119 (S.D.N.Y. 1997); *see also Steinig v. McDonald's Corp.*, No. 97-3781-CIV, 1998 WL 1064841 (S.D. Fla. Jan. 12, 1998) (standard for allowing deposition of counsel is whether it is only practical means available of obtaining relevant information). In order to depose opposing counsel, a party must show that (1) no means, other than deposing

counsel, exist to obtain the information: (2) the information sought is relevant: and (3) the information is crucial to preparation of the case. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). A deposition of an opponent's counsel is improper where any one of these three criteria is not met. *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) (affirming lower court's issuance of protective order where defendant did not show that deposition involved crucial issues). As discussed above, the Governor cannot show that the information sought is relevant, that no other means exist to obtain the information, and that it is crucial to his preparation of this case.

In addition to privilege and work product concerns, "[f]ederal courts ... have held that depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case." *Id.* "The party seeking the deposition, therefore, has the burden of overcoming these presumptions. The party seeking the deposition must show the propriety and need for the deposition." *West Peninsular Title Co.*, 132 F.R.D. at 303. Thus, depositions of opposing counsel are disfavored.

ACLU-FL submits that the Governor can show absolutely no justification for deposing Plaintiff's counsel. The information sought is not likely to lead to discoverable evidence and, even if there were some marginal potential relevance, the Governor cannot show that his need outweighs the dangers associated with deposing Plaintiff's counsel.

## IV.    Conclusion

For the foregoing reasons, ACLU-FL respectfully requests this Court to grant its motion to quash Defendant's subpoenas, to enter an order protecting ACLU-FL from discovery requests by the Governor, and to require Defendant to pay ACLU-FL's costs, including attorneys' fees, in preparing this motion.

### Rule 7.1(3) Certificate of Counsel

Pursuant to S.D. Local Rule 7.1(3), undersigned counsel certifies that he and Mr. Marshall conferred with attorneys Charles M. Trippe, Jr., Jesse Panuccio, and Michael M. Sevi, counsel for Governor Scott, between Thursday, October 13 and Friday, October 14 in a good faith effort to resolve the issues raised in this motion. The parties were unable to reach agreement.

Dated: October 17, 2011                      Respectfully submitted,

James K. Green, Esq.
JAMES K. GREEN, P.A.
Suite 1650, Esperante
222 Lakeview Ave.
West Palm Beach, FL 33401
Florida Bar No: 229466
(561) 659-2029
(561) 655-1357 (facsimile)

Randall C. Marshall, Esq.
Legal Director
American Civil Liberties Union
Foundation of Florida, Inc.
4500 Biscayne Blvd., Ste. 340
Miami, FL 33137
Florida Bar No: 181765
(786) 363-2700
(786) 363-1108 (facsimile)

COUNSEL FOR ACLU-FL

CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2011, I served Counsel for the Governor by e-mail and by U.S. Mail:

Charles M. Trippe, Jr., General Counsel
Jesse M. Panuccio, Deputy General Counsel
Michael M. Sevi, Assistant General Counsel
Executive Office of the Governor
The Capitol, Room 209
400 South Monroe Street
Tallahassee, FL 32399-6536

Randall C. Marshall

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-21976-CV-Ungaro

AFSCME COUNCIL 79,

      Plaintiff,

v.

RICK SCOTT, IN HIS OFFICIAL CAPACITY
OF GOVERNOR OF FLORIDA,

      Defendant.

_____/

## DECLARATION OF RANDALL C. MARSHALL PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF MOTION TO QUASH

I, Randall C. Marshall, state as follows:

    1.    I am over the age of 18 and fully competent to testify regarding the contents of this Declaration, which I make based upon my personal knowledge.

    2.    I am the Legal Director for the ACLU-FL[1] and have held that position since 2000.

    3.    I have prepared this Declaration to explain how Governor Scott's subpoenas to the "ACLU of Florida" in ongoing litigation infringe upon the ACLU-FL's work product and thought processes in our ongoing representation of plaintiffs in drug testing cases and further seek information from past litigation that similarly is work product and reflects our attorneys' thought processes. In addition, the subpoenas are so burdensome that they cannot be complied

---

[1]    The subpoenas are directed to the "ACLU of Florida." There is no legal entity known as the "ACLU of Florida." There are two entities - the American Civil Liberties Union of Florida, Inc., a 501(c)(4) organization which is the national ACLU affiliate in Florida, and the American Civil Liberties Foundation of Florida, Inc., a 501(c)(3) organization primarily responsible for ACLU litigation in Florida and counsel for Plaintiff in this case. I am Legal Director of both entities, to which I will refer collectively, for convenience, as the "ACLU-FL".

with by ACLU-FL. The subpoenas have no time limitations and therefore seek information dating back to the inception of the ACLU-FL – 1965.

4.      The ACLU-FL's only role in this litigation is as counsel of record to the Plaintiff.

5.      The subpoenas request information that is not relevant to the instant litigation and appear to be calculated to harass the ACLU-FL rather than gather facts to support the Executive Order mandating widespread suspicionless drug testing of all employees of all executive agencies.

6.      The ACLU-FL currently employs seven full-time attorneys who litigate in state and federal courts on a variety of civil rights and civil liberties issues, including mandatory drug testing by state actors, in the public sector. Some of those attorneys have in the past, and will in the future, work as lobbyists on a variety of issues, including drug testing in the public sector. The ACLU-FL also utilizes attorneys in private practice to litigate on behalf of the ACLU-FL as "cooperating attorneys," including cases involving mandatory drug testing in the public sector.

7.      ACLU-FL attorneys currently represent plaintiffs in two cases challenging mandatory, suspicionless drug testing: this case, challenging Governor Scott's Executive Order mandating drug testing of all employees in executive agencies, and *Lebron v. Florida Dept. of Children & Families*, Case No. 6:11-cv-1473 (M.D. Fla., filed Sept. 6, 2011) (challenging suspicionless drug testing of all applicants for Temporary Cash Assistance).

8.      In this case, Peter Walsh, an attorney in private practice, has agreed to serve as a Cooperating Attorney. Mr. Walsh, Shalini Goel Agarwal (an ACLU-FL staff attorney who was recently licensed in Florida), and I regularly and routinely communicate regarding this case. We also regularly communicate with other members of our staff regarding this litigation.

9.      In *Lebron*, while we have not utilized cooperating attorneys, we have partnered with the Florida Justice Institute to co-counsel the case. In addition, ACLU-FL attorneys have regularly consulted with other advocacy groups that we are working with on the drug testing issues. The communications are lawyer to lawyer, are for the purpose of litigation strategy and are confidential.

10.     In both of these cases, we have shared documents that we have obtained through our own research, and other counsels' research. Many of these documents are responsive to the Governor's subpoena. The documents that we have obtained through this research are generally publicly available and reflect the nature of our research in preparing our legal strategy in these cases. The Governor should not be allowed to benefit by our attorneys' research efforts. Indeed, the Governor's counsel is quite capable of obtaining, and using, the kinds of documents they seek from the ACLU-FL. *See, e.g., Lebron*, Doc. 24-1 (U.S. Navy policy regarding drug testing); 24-2 (standard employment application for Publix); 24-3 (report from U.S. Department of Labor regarding private employer drug testing); and 24-4 (results of Qunnipiac University poll regarding public's approval of TANF drug testing).

11.     Similarly, documents obtained by cooperating attorneys or staff attorneys for use in litigation in *Wenzel v. Bankhead*, 351 F. Supp. 2d 1316 (N.D. Fla. 2004) (holding that general interest in sober employees was not a special need that could support drug testing of a planner at the Florida Dept. of Juvenile Justice, one of the agencies subject to the challenged Executive Order in *AFSCME v. Scott*; policy violated Fourth Amendment as applied), and *Baron v. City of Hollywood,* 93 F. Supp. 2d 1337 (S.D. Fla. 2000) (holding that city's policy of requiring  drug tests of  all job candidates in order to maintain its positive image and ensure that public funds are

in good hands violated Fourth Amendment) were obtained as a result of independent research for the litigation and reflects our work product and litigation strategy.

12.    Moreover, in the context of this litigation, challenging the Governor's Executive Order mandating suspicionless, across the board drug testing for all employees of executive agencies, the ACLU-FL's knowledge in the areas outlined by the Governor[2] is simply irrelevant. The ACLU-FL's involvement in this litigation is one of providing counsel. Whether the Governor can mandate suspicionless drug testing of governmental employees is a question of law, not a question of the ACLU-FL's knowledge and position on drug testing issues.

13.    The document subpoena seeks to obtain the ACLU-FL's work product and to gather information that is publicly available and equally accessible to the Governor's attorneys. They should not be permitted access to our research. The deposition subpoena is harassing and seeks to gather the knowledge and opinion of ACLU-FL employees and officials when the ACLU-FL is not a party to this litigation and is only involved as counsel for plaintiff.

14.    During the 2011 Florida legislative session, the ACLU-FL had three registered lobbyists who testified and advocated against suspicionless drug testing for welfare applicants.

15.    Additionally, there are 18 volunteer-led ACLU-FL Chapters throughout the State, which engage in local advocacy campaigns and meet with their legislative delegations on many matters, including mandatory suspicionless drug testing for welfare applicants and state employees. Volunteer chapters meet in members' offices or in volunteers' homes, as well as in libraries, churches and restaurants, and there is no unified system of document retention.

---

[2]    The ACLU-FL's: "knowledge and position on the prevalence of drug testing by either private or public employers in Florida and nationwide;" "knowledge and position on the prevalence of drug use in Florida and nationwide;" "knowledge and position on public approval or disapproval of drug testing by employers in Florida and nationwide;" or "knowledge and position on the effects of drug use in the workplace." Exhibit A, Deposition subpoena.

Page **4** of **8**

16.     The ACLU-FL has four offices in Florida: the main office in Miami; and regional offices in Tampa, Jacksonville, and Pensacola. Each regional office maintains its own filing and document storage system. Each regional office communicates directly with members, Chapter volunteers, and local and State government officials.

17.     The State office in Miami, the regional offices, and the Chapters are in frequent contact, via email and other means, both directly and through our Communications Department, regarding legislative strategy and policy issues, including drug testing in the public sector. Our offices are also in touch with our National offices in New York City and Washington, D.C., as well as with other state affiliates nationwide who are confronting similar legislation and litigation.

18.     Particularly during the legislative sessions, our Communications Department acts as a bridge between, on the one hand, the State office, the Chapters, and the regional offices, and on the other hand, the media, on matters of public concern, including drug testing in the public sector.

19.     The ACLU-FL uses social media, including FaceBook and Twitter, and mass email "Alerts" through a system known as Convio, to send thousands of emails every month to ACLU-FL members and supporters on a number of issues of public concern, including drug testing in the public sector. The ACLU-FL also posts items regarding drug testing and drug policy on its website – www.aclufl.org – and has done so for many years. We also obtain materials regarding drug policy, including drug testing, from the National ACLU. Many of those materials are publicly available on our National organization's website – www.aclu.org.

20.     Over the past year alone, I estimate that nearly 1,000,000 million emails have been sent by the ACLU-FL to members, supporters, the members of local Chapter Boards of

Directors, and the media on various issues, including drug testing in the public sector. That estimate does not count studies, position papers, letters, or emails generated by the 18 Chapters and regional offices, rather than by the State office, which, if they still exist, remain in the hands of the Chapters and regional offices.

21.     For example, on just one day (October 11, 2011) our Communications Department received 46 emails from media representatives and individuals, all relating specifically to drug testing in the public sector. They responded to each email, which generated 92 emails in total for just one day. That day was relatively quiet; some days, depending on what has happened that day (the filing of a lawsuit, or the entry of a court order, for example) there are hundreds of emails coming into and out of the Communications Department on the issue of mandatory drug testing in the public sector.

22.     That number does not include internal communications between the ACLU-FL attorneys and our Communications Department, and between the attorneys and other advocacy groups they are working with on the drug testing issues in other litigation, namely the *Lebron v. DCF* case.

23.     There is simply no feasible way to gather, organize, and "produce" emails and other materials responsive to Governor Scott's subpoena without spending hundreds of hours of personnel time, consulting every member of the staff – here in Miami, as well as in Tampa, Jacksonville, and Pensacola – to determine which individuals have information responsive to the Governor's subpoena, and contacting numerous members of each of the 18 Chapters, who are simply volunteers and are not paid or otherwise compensated for their efforts on behalf of the ACLU-FL, meet in members' homes or offices throughout the State, to comb through years of

records to ferret out materials that may be responsive to the Governor's subpoena for documents to the "ACLU of Florida."

24.      Complying with the Governor's subpoena for a deposition is similarly problematical. Because of my involvement in, and familiarly with, current and past litigation involving mandatory drug testing, as well as my knowledge of the ACLU-FL's public advocacy efforts on this issue, I would be designated as an appropriate official to submit for a deposition in order to cover the Governor's deposition topics. *See* Exhibit A of the Governor's deposition subpoena.

25.      Although I have knowledge about these areas, I would have to spend dozens of hours reviewing cases files, two of which are in off-site storage, in order to determine what I could reveal without impinging upon our work product and case strategy decisions as well as ascertaining the "knowledge" of staff and volunteers to fully respond to questions. Furthermore, we have many years' worth of un-catalogued documents in storage with an outside vendor. I believe that there are some documents in storage, among the roughly 225 (low estimate) bankers' boxes stored, that may be responsive to the Governor's subpoena. Each banker's box holds approximately 2,000 pages of paper, based on a count of one randomly selected full box (containing documents unrelated to any litigation) of the size used for the vendor's storage. Most, if not all of those documents predate my tenure and I do not know what the boxes contain, or where any potentially responsive materials could be located.

26.      If I were required to collect the materials requested in the Governor's subpoena and prepare for such a deposition, it would effectively bring my work as Legal Director to a halt.

27.      Compliance with the subpoenas is also costly and burdensome to the operation of the ACLU-FL. In order to determine precisely whether such documents are in fact in storage,

locate them, and make copies of them for the Governor would require payment to the outside vendor for rush retrieval which we estimate to be at least $3,000.00.

28.     The number of boxes and the quantities of documents would rapidly overtake the office space of the ACLU-FL, which is shared with two other non-profit advocacy organizations, whose operations would also be disrupted. Additionally, searching for responsive documents would require a minimum of two weeks of having at least two staff members working full time to comb through the boxes, and dozens if not hundreds of hours having an attorney prepare privilege logs. This would result in untold disruption of our work. The copying costs are unknown, as they would depend upon the number of documents received.

29.     Our Miami office's support staff consists of one Administrative Assistant and one Legal Assistant. Pulling them from their customary jobs in an attempt to comply with the Governor's subpoena for irrelevant documents would be an incredibly onerous burden on the day-to-day functions of the ACLU-FL.


I declare under penalty of perjury that the foregoing is true and correct. Executed in Miami-Dade County, Florida, this 17th day of October, 2011.

Randall C. Marshall

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL, EMPLOYEES (AFSCME) COUNCIL 79, | ) ) ) | |
| | ) | 1:11-cv-21976 |
| *Plaintiff,* | ) | Judge Ursula Ungaro |
| | ) | |
| v. | ) | |
| | ) | |
| RICK SCOTT, in his official capacity as Governor of the State of Florida, | ) ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## DEFENDANT'S CORRECTED INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)

Pursuant to Fed. R. Civ. P. 26(a)(1), and the Court's order of June 17, 2011, Defendant

Rick Scott, in his official capacity as Governor of the State of Florida, makes the following

initial disclosures. These initial disclosures are based on the information reasonably available to

Defendant at this time, and Defendant reserves the right, pursuant to Rule 26(e)(1), to

supplement these disclosures, to the extent required under that rule or other applicable law.

I.   **Rule 26(a)(1)(A)(i)-(ii): Individuals Likely to Have Discoverable Information, Location of that Information, and Description of Documents Defendant May Use to Support His Defenses**[1]

At this time, Defendant believes that the following individuals may have discoverable

information or documents that Defendant may use to support his defenses:

---

[1] The disclosures required under Rule 26(a)(1)(A)(iii)-(iv) are not applicable to this litigation. Nothing in these Initial Disclosures should be deemed as an admission that the information referenced herein is relevant to Plaintiff's claims.

| NAME | LAST KNOWN ADDRESS AND TELEPHONE NUMBER | SUBJECT AND LOCATION OF DISCOVERABLE INFORMATION |
|---|---|---|
| Carolyn Timman, in her capacity as records custodian | Executive Office of the Governor Office of Open Government The Capitol 400 South Monroe Street, Tallahassee, FL 32399-6536 (850) 921-6099 | Copy of Executive Order 11-58; copy of memorandum dated June 10, 2011; copies of past, present, and proposed Governor's agencies' drug-testing policies and procedures. |
| Amy McKeever Toman, in her capacity as records custodian | Department of Business & Professional Regulation Customer Contact Center 1940 North Monroe Street Tallahassee, FL 32399-1027 (850) 487-1395 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| John Jackson, in his capacity as records custodian | Department of Children & Families Office of the General Counsel 1313 Winewood Blvd. Tallahassee, FL  32399-0700 (850) 488-4855 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Leslie Anderson-Adams, in her capacity as records custodian | Department of Community Affairs Office of the General Counsel 2555 Shumard Oak Blvd. Tallahassee, FL  32399-2100 (850) 922-1689 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Perri Dale, in her capacity as records custodian | Department of Corrections Office of the General Counsel 2601 Blair Stone Road, Tallahassee, FL, 32399 (850) 488-2326 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |

2

| NAME | LAST KNOWN ADDRESS AND TELEPHONE NUMBER | SUBJECT AND LOCATION OF DISCOVERABLE INFORMATION |
|---|---|---|
| Dean Kowalchyk, in his capacity as records custodian | Department of Elder Affairs Office of the General Counsel 4040 Esplanade Way Tallahassee, FL 32399-7000 (850) 414-2000 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| William Booher, in his capacity as records custodian | Department of Emergency Management External Affairs 2555 Shumard Oaks Blvd. Tallahassee, FL 32399-2100 (850) 413-9839 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Bonnie Hazleton, in her capacity as records custodian | Department of Environmental Protection Office of the Ombudsman and Public Services 3900 Commonwealth Blvd, MS 49 Tallahassee, FL 32399 (850) 245-2121 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Renee Alsobrook, in her capacity as records custodian | Department of Health Public Records Coordinator 4052 Bald Cypress Way-Bin A02 Tallahassee, FL 32399-1702 (850) 245-4005 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| William Roberts, in his capacity as records custodian | Agency for Health Care Administration Public Records Coordinator 2727 Mahan Drive Ft. Knox #3, Mail Stop #3 Tallahassee, FL 32308-5403 (850) 412-3688 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |

| NAME | LAST KNOWN ADDRESS AND TELEPHONE NUMBER | SUBJECT AND LOCATION OF DISCOVERABLE INFORMATION |
|---|---|---|
| Elisa B. Watson, in her capacity as records custodian | Department of Juvenile Justice Public Information Officer Florida Department of Juvenile Justice Knight Building 2737 Centerview Drive Tallahassee, FL  32399-3100 (850) 921-4129 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Glenda Thorton, in her capacity as records custodian | Department of the Lottery Office of the General Counsel 250 Marriott Drive Tallahassee, FL  32301 (850) 487-7724 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Matthew Minno, in his capacity as records custodian | Department of Management Services Office of the General Counsel 4050 Esplanade Way Tallahassee, FL 32399-0950 (850) 922-6617 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Col. Elizabeth Masters, in her capacity as records custodian | Department of Military Affairs PO Box 1008 St. Augustine, FL  32085-1008 (904) 823-0294 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Pete Mallison, in his capacity as records custodian | Agency for Persons with Disabilities Public Records Custodian 4030 Esplanade Way, Suite 360 Tallahassee, FL  32399-0950 (850) 921-3779 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |

4

| NAME | LAST KNOWN ADDRESS AND TELEPHONE NUMBER | SUBJECT AND LOCATION OF DISCOVERABLE INFORMATION |
|---|---|---|
| Christopher Cate, in his capacity as records custodian | Department of State<br>R. A. Gray Building<br>500 South Bronough Street<br>Tallahassee, FL  32399-0250<br>(850) 245-6527 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Robert Burdick, in his capacity as records custodian | Department of Transportation<br>Office of the General Counsel<br>605 Suwannee Street<br>Tallahassee, Florida 32399-0450<br>(850) 414-5362 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |
| Rosa McNaughton, in her capacity as records custodian | Agency for Workforce Innovation<br>Office of the General Counsel<br>Caldwell Bldg.<br>107 E. Madison St.<br>Tallahassee, FL  32399<br>(850) 245-7150 | Information and/or documents related to past, present, and proposed drug-testing policies and procedures, including, but not necessarily limited to, the text of policies and/or statistics related to drug testing. |

Dated: August 18, 2011                            Respectfully submitted,

                                                  By: _____

                                                  Charles M. Trippe, Jr. (FBN 69760)
                                                  General Counsel
                                                  Office of the General Counsel
                                                  Executive Office of the Governor
                                                  400 South Monroe Street, Room 209
                                                  Tallahassee, FL 32399-6536
                                                  (850) 488-3494 telephone
                                                  (850) 922-0309 facsimile
                                                  Charles.Trippe@eog.myflorida.com
                                                  *Counsel for Governor Rick Scott*

## CERTIFICATE OF SERVICE

I, Charles Trippe, hereby certify that on this 18th day of August, 2011, I, pursuant to Fed.

R. Civ. P. 5(b)(2)(B), caused a copy of the foregoing Defendant's Corrected Initial Disclosures

to be served by depositing it in first-class mail to:

Randall C. Marshall (Fla. Bar No. 181765)
RMarshall@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1108
*Attorney for Plaintiff AFSCME*


Peter G. Walsh (Fla. Bar No. 970417)
pwalsh@stabinski-funt.com
Stabinski & Funt, PA
757 NW 27 Ave.
Miami, FL 33125
Tel: 305-643-3100
Fax: 305-643-1382
*Attorney for Plaintiff AFSCME*
*(Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.)*


Charles Trippe

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-cv-21976-Ungaro

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES (AFSCME) COUNCIL 79, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| RICK SCOTT, in his official capacity as Governor of the State of Florida, | ) ) ) |
| *Defendant.* | ) ) ) |

## DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant hereby requests that Plaintiff American Federation of State, County and Municipal Employees Council 79 answer fully, in writing and under oath, each of the following interrogatories.  Pursuant to Rule 33(b)(2) and the parties' agreement, Plaintiffs' answers must be provided within twenty-one days of service of these interrogatories.  Answers to these interrogatories should be returned to Office of the General Counsel (Room 209), Executive Office of the Governor, The Capitol, 400 South Monroe St., Tallahassee, Florida 32399, or at any other location and time to which counsel mutually agree.

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.　　"Plaintiff" and/or "AFSCME" refer to the American Federation of State, County, and Municipal Employees Council 79 and all subdivisions and instrumentalities thereof.  The

1

terms "Plaintiff" and/or "AFSCME" also include all persons who are officials, employees, agents, or representatives of Plaintiff.

2.      The words "you," "yours," and/or "yourselves" means Plaintiff American Federation of State, County, and Municipal Employees Council 79 an any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Plaintiff.

3.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association, or any other entity.  "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

4.      The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and "including without limitation" and shall not indicate limitation to the examples or items mentioned.

5.      The singular shall include the plural and vice versa; the terms of each word shall be construed to include its plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive

6.      The root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

7.      The word "each" shall be construed to include "every" and vice versa.

8.      The word "any" shall be construed to include "all" and vice versa.

9.      The present tense shall be construed to include the past tense and vice versa.

10.     The masculine shall be construed to include the feminine and vice versa.

2

11.     The word "document" shall mean any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, including, but not limited to: correspondence, emails, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings.

12.     "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

13.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

14.     The term "action" shall mean the within case entitled American Federation of State, County, and Municipal Employees (AFSCME) Council 79 v. Rick Scott, in his official capacity as the Governor of Florida, Case No. 1:11-cv-21976-Ungaro, pending in the United States District Court for the Southern District of Florida.

15.     The word "identify", when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

16.     The term "drug use" means the ingestion, inhalation, injection, use, or coming

under the influence of illegal narcotics, including but not limited to amphetamines, cannabinoids,

marijuana, tetrahydrocannabinol, hashish, hashish oil, cocaine, hallucinogens, phencyclidine,

methaqualone, opiates, barbiturates, benzodiazepines, synthetic narcotics, and/or methadone.

## INSTRUCTIONS

1.     Pursuant to Fed. R. Civ. P. 26(e)(1), these interrogatories are continuing in nature

and Plaintiff shall provide supplemental answers, which will augment or modify any answers

contained in Plaintiff's responses.

2.     When an interrogatory requests Plaintiff to provide the "name" of, or to "identify"

or "describe," a person, the answer shall contain the following information with respect to each

such person: full name, current or last known business and home addresses, business and home

telephone number, email address, and job title.

3.     In answering each interrogatory, furnish all information available to Plaintiff that

is relevant or that might lead to the discovery of relevant evidence, including information in the

possession of Plaintiff's attorneys, or their investigators, and all persons acting on Plaintiff's

behalf, including but not limited to Plaintiff's employees, agents, officers, or representatives.  If

Plaintiff is unable to answer an interrogatory in full after exercising due diligence to supply a

complete answer, so state and answer to the extent possible.  Specify the reasons for Plaintiff's

inability to answer and state whatever information or knowledge Plaintiff has concerning the

unanswered portions.

4.     If any interrogatory is objected to on the grounds of overbreadth, specifically state

the manner in which it is overly broad and respond to the interrogatory as narrowed to conform

to such objection.

5.      If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information pursuant to Local Rule 26.1.G. 6.(b), unless divulging the information would disclose the privileged information:

      a.   the nature of the privilege claimed (including work product);

      b.   if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

      c.   the date of the document, electronically stored information or oral communication;

      d.   if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

      e.   if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

      f.   the general subject matter of the document, electronically stored information or oral communication.

6.      If Plaintiff refuses to answer an interrogatory on grounds of burdensomeness, Plaintiff shall explain in as much detail as possible the basis for its contention.

## INTERROGATORIES

**Interogatorry No. 1:** Please provide the name, address, telephone number, place of employment, and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Federal Rule of Civil Procedure 7(a)) filed in this action, or any fact underlying the subject matter of this action.

**Interogatorry No. 2:** Please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response to Interrogatory No. 1 may have, including but not limited to whether such person will provide a declaration, affidavit, or testimony in this case at any phase (including the dispositive-motion and/or summary-judgment phase).

**Interogatorry No. 3:** Please provide the name of each person whom you may use as an expert witness at trial or from whom you may submit a declaration, affidavit, or report in conjunction with a dispositive motion.

**Interogatorry No. 4:** Please state in detail the substance of the opinions to be provided by each person whom you may use as an expert witness at trial or from whom you may submit a declaration, affidavit, or report in conjunction with a dispositive motion.

**Interogatorry No. 5:** Please identify each and any AFSCME member who you contend provides AFSCME with standing to challenge Executive Order 11-58 (i) facially, and/or (ii) as applied to each agency affected by Executive Order 11-58 at the time of its promulgation. For each such person, please provide name, address, phone number, fax number, email address, and job title.

**Interogatorry No. 6:** Please identify each position or person at every agency affected by Executive Order 11-58 at the time of its promulgation to which you contend Executive Order 11-58 cannot be constitutionally applied.

**Interogatorry No. 7:** For each such position or person identified in response to Interrogatory No. 6, identify the AFSCME member who provides AFSCME with standing to challenge Executive Order 11-58 as applied to that position or person.

**Interogatorry No. 8:** With respect to AFSCME members who you contend Executive Order 11-58 cannot be constitutionally applied, please identify for each such member any private employer he or she worked for prior to, during, or after employment with any agency affected by Executive Order 11-58 at the time of its promulgation.

**Interogatorry No. 9:** For each agency affected by Executive Order 11-58 at the time of its promulgation, please identify any and all employees by position titles to whom you contend or admit that Executive Order 11-58 *can* be applied consistent with the requirements of the Fourth Amendment to the United States Constitution.  If you contend an agency has no such employees, so state.  This Interrogatory is asking that you identify each position for which you contend the State may require pre-employment and/or random drug testing consistent with the United States Constitution, and does *not* ask about any state law requirements.

**Interogatorry No. 10:**  With respect to AFSCME members to whom you contend Executive Order 11-58 cannot be applied under the Fourth and Fourteenth Amendments to the United States Constitution, do you contend that drug use by these employees cannot lead to each the results listed below?  If so, explain why for each specific result.

    a.   Increased propensity toward violence in the workplace.

    b.   Decreased productivity in performing job tasks and requirements.

    c.  Increased cost to the employer.

    d.  Detrimental effects to the employee's health.

    e.  Exposure of coworkers to criminal activity.

    f.  Potential for extended absences from work.

    g.  Potential for arrest or other involvement in the criminal justice system.

    h.  Decreased public confidence in the public employer that employs the employee.

    i.  Increased risk to members of the public who interact with those employees while such employees are on the job.

**Interogatorry No. 11:**  Do you contend that the State of Florida does not have an interest in employing employees who are free of the influence of drug use?  If so, why?

**Interogatorry No. 12:**  Do you contend that the State of Florida does have an interest in employing employees who are free of the influence of drug use?  If so, why?

**Interogatorry No. 13:**  How many state employees represented by AFSCME have undergone (a) pre-employment or (b) random drug testing in the private sector before, during, or after working for the State of Florida?

**Interogatorry No. 14:**  Please identify the total number of AFSCME employees who have ever worked at Publix in any position or capacity.

**Interogatorry No. 15:**  Please identify the total number of AFSCME employees who have ever worked at WalMart in any position or capacity.

**Interogatorry No. 16:**  In this case, in determining a reasonable expectation of privacy under the Fourth and Fourteenth Amendments, what sources or factors do you contend the Court may and/or should consider?

**Interogatorry No. 17:**  In this case, in determining a reasonable expectation of privacy under the Fourth and Fourteenth Amendments, may the Court look to the prevalence of drug testing in the private employment sector?  If not, why not?

Dated: October 3, 2011

Respectfully submitted,

Charles M. Trippe, Jr. (FBN 69760)
  General Counsel
Jesse Panuccio (FBN 31401)
  Deputy General Counsel
Office of the General Counsel
Executive Office of the Governor
400 South Monroe Street, Room 209
Tallahassee, FL 32399-6536
(850) 488-3494 telephone
(850) 922-0309 facsimile
Charles.Trippe@eog.myflorida.com
Jesse.Panuccio@eog.myflorida.com
*Counsel for Governor Rick Scott*

9

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 3rd day of October, 2011, I, pursuant to Fed.

R. Civ. P. 5(b)(2)(B), caused a copy of the foregoing Defendant's First Set of Interrogatories to

be served by email to:

Randall C. Marshall (Fla. Bar No. 181765)
RMarshall@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1108
*Attorney for Plaintiff AFSCME*


Peter G. Walsh (Fla. Bar No. 970417)
pwalsh@stabinski-funt.com
Stabinski & Funt, PA
757 NW 27 Ave.
Miami, FL 33125
Tel: 305-643-3100
Fax: 305-643-1382
*Attorney for Plaintiff AFSCME*
*(Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.)*

Jesse Panuccio

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-cv-21976-Ungaro

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES (AFSCME) COUNCIL 79, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| RICK SCOTT, in his official capacity as Governor of the State of Florida, | ) ) ) |
| *Defendant.* | ) ) ) |

## DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant hereby requests that Plaintiff American Federation of State, County and Municipal Employees Council 79 respond fully, in writing and under oath, for purposes of this action only and subject to objections to admissibility, to each of the following requests for admission. Pursuant to Rule 33(b)(2) and the parties' agreement, Plaintiffs' answers must be provided within twenty-one days of service of these Requests for Admission. Responses to these Requests for Admission should be returned to Office of the General Counsel (Room 209), Executive Office of the Governor, The Capitol, 400 South Monroe St., Tallahassee, Florida 32399, or at any other location and time to which counsel mutually agree.

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the following rules govern your response to the Requests for Admission that follow:

1

1.      Plaintiff's denial of any statement as to which an admission is requested must fairly meet the substance of the requested admission.

2.      When good faith requires that Plaintiff qualify its answer or deny only a part of the matter as to which an admission is requested, it shall specify so much of it as is true and quality or deny the remainder.

3.      Plaintiff may not give lack of information or knowledge as a reason for its failure to admit or deny the truth of the statement as to which an admission is requested unless Plaintiff states that it has made reasonable inquiry and that the information known or reasonably obtainable by it is insufficient to enable it to admit or deny the truth of the matter as to which an admission has been requested.

4.      If Plaintiff considers that a matter as to which an admission has been requested presents a genuine issue for trial, it may not, on that ground alone, object to the request.

5.      Statements as to which admissions are now requested shall be deemed admitted if Plaintiff fails to admit, deny, or object to the statements within twenty-one days after service of this document.

6.      If any request for admission is objected to on the ground of overbreadth, specifically state the matter in which it is overly broad and respond to the request for admission as narrowed to conform to such objection.

7.      In conformity with Rule 37 of the Federal Rules of Civil Procedure, as to any matter denied, Defendant may apply to the Court for an order requiring Plaintiff to pay the reasonable expenses incurred in proving the truth of any such matter, including the costs of depositions and attorneys' fees.

## **DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1.      "Plaintiff" and/or "AFSCME" refer to the American Federation of State, County, and Municipal Employees Council 79 and all subdivisions and instrumentalities thereof.  The terms "Plaintiff" and/or "AFSCME" also include all persons who are officials, employees, agents, or representatives of Plaintiff.

2.      The words "you," "yours," and/or "yourselves" means Plaintiff American Federation of State, County, and Municipal Employees Council 79 an any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Plaintiff.

3.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association, or any other entity.  "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

4.      The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and "including without limitation" and shall not indicate limitation to the examples or items mentioned.

5.      The singular shall include the plural and vice versa; the terms of each word shall be construed to include its plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive

6.      The root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

7.      The word "each" shall be construed to include "every" and vice versa.

8.      The word "any" shall be construed to include "all" and vice versa.

3

9.      The present tense shall be construed to include the past tense and vice versa.

10.     The masculine shall be construed to include the feminine and vice versa.

11.     "Date" shall mean the exact date, month, and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

12.     "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

13.     The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

14.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

15.     The term "action" shall mean the case entitled American Federation of State, County, and Municipal Employees (AFSCME) Council 79 v. Rick Scott, in his official capacity as the Governor of Florida, Case No. 1:11-cv-21976-Ungaro, pending in the United States District Court for the Southern District of Florida.

## REQUESTS FOR ADMISSION

**Request for Admission No. 1:**  Admit that, at the time of promulgation, there was at least one employee represented by AFSCME to whom the drug-testing required by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 2:**  Admit that there was at least one employee represented by AFSCME, at every agency affected by Executive Order 11-58 at the time of its promulgation,

4

to whom the drug-testing required by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 3:**  Admit that, at the time of promulgation, there were more than 100 employees represented by AFSCME to whom the drug testing mandated by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 4:**  Admit that, at the time of promulgation, there were more than 500 employees represented by AFSCME to whom the drug testing mandated by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 5:**  Admit that, at the time of promulgation, there were more than 1,000 employees represented by AFSCME to whom the drug testing mandated by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 6:**  Admit that, at the time of promulgation, there were more than 5,000 employees represented by AFSCME to whom the drug testing mandated by Executive Order 11-58 could have been applied consistent with the Fourth and Fourteenth Amendments to the United States Constitution.

**Request for Admission No. 7:**  Admit that in the private sector in Florida drug testing is "rampant." (This term was used by counsel for the American Civil Liberties Union in a September 26, 2011 hearing on Plaintiff's motion for preliminary injunction in *Lebron v. Wilkins*, Case No. 6:11-cv-01473 (M.D. Fla.)).

**Request for Admission No. 8:**  Admit that in some industries, taking a drug test is as routine as filling out a job application.

**Request for Admission No. 9:**  Admit that from 1987 to 1997, the incidence of workplace drug testing increased at least 277 percent.

**Request for Admission No. 10:**  Admit that employers have the right to expect workers not to be high or drunk on the job.

**Request for Admission No. 11:** Admit that drug testing in private sector employment has become routine.

**Request for Admission No. 12:**  Admit that suspicionless drug testing of employees, especially in the private sector, has been steadily growing since 1986.

**Request for Admission No. 13:** Admit that the State, as an employer, has the right to a safe and productive workplace.

**Request for Admission No. 14:** Admit that millions of American workers are drug tested each year even though they are not suspected of drug use.

**Request for Admission No. 15:** Admit that universal drug testing of employees is the easiest way to screen employees who use illegal drugs.

**Request for Admission No. 16:** Admit that Publix is Florida's largest employer.

**Request for Admission No. 17:** Admit that Publix requires pre-employment screening for all potential employees.

**Request for Admission No. 18:** Admit that all Publix employees are subject to random drug tests.

**Request for Admission No. 19:** Admit that abuse of drugs is a problem in America today.

6

**Request for Admission No. 20:** Admit that millions of people misuse drugs, including alcohol, with disastrous effects, both for themselves and for those around them, and employers are not immune from this problem.

**Request for Admission No. 21:** Admit that a company of any size is, over time, likely to encounter employees or applicants with drug problems.

**Request for Admission No. 22:** Admit that millions of American workers every year, in both the public and private sectors, are subjected to urinalysis drug tests as a condition for getting or keeping a job.

**Request for Admission No. 23:** Admit that today tens of millions of American workers are drug tested, either before they are hired or as a condition of continued employment.

**Request for Admission No. 24:** Admit that in most states, workers in the private sector have no legal protection from a drug-testing requirement in the workplace.

**Request for Admission No. 25:** Admit that in 1987, 21 percent of the American Management Association's members had instituted drug testing programs.

**Request for Admission No. 26:** Admit that by 1996, 81 percent of the American Management Association's members tested for drug use among employees.

**Request for Admission No. 27:** Admit that an employee's being under the influence of illegal drugs can cause or be responsible for the following effects, regardless of job duties:

   a.   Increased propensity toward violence in the workplace.
   b.   Decreased productivity in performing job tasks and requirements.
   c.   Increased cost to the employer.
   d.   Detrimental effects to the employee's health.
   e.   Exposure of coworkers to criminal activity.
   f.   Potential for extended absences from work.
   g.   Potential for arrest or other involvement in the criminal justice system.
   h.   Decreased public confidence in the public employer that employs the
        employee.

7

i.   Increased risk to members of the public who interact with those employees while such employees are on the job.

Dated: October 3, 2011                    Respectfully submitted,

Charles M. Trippe, Jr. (FBN 69760)
  General Counsel
Jesse Panuccio (FBN 31401)
  Deputy General Counsel
Office of the General Counsel
Executive Office of the Governor
400 South Monroe Street, Room 209
Tallahassee, FL 32399-6536
(850) 488-3494 telephone
(850) 922-0309 facsimile
Charles.Trippe@eog.myflorida.com
Jesse.Panuccio@eog.myflorida.com
*Counsel for Governor Rick Scott*

8

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 3rd day of October, 2011, I, pursuant to Fed.

R. Civ. P. 5(b)(2)(B), caused a copy of the foregoing Defendant's First Set of Requests for

Admission to be served by email to:

Randall C. Marshall (Fla. Bar No. 181765)
RMarshall@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1108
*Attorney for Plaintiff AFSCME*


Peter G. Walsh (Fla. Bar No. 970417)
pwalsh@stabinski-funt.com
Stabinski & Funt, PA
757 NW 27 Ave.
Miami, FL 33125
Tel: 305-643-3100
Fax: 305-643-1382
*Attorney for Plaintiff AFSCME*
*(Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.)*

Jesse Panuccio

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-cv-21976-Ungaro

| | |
|---|---|
| AMERICAN FEDERATION OF STATE,<br>COUNTY, AND MUNICIPAL<br>EMPLOYEES (AFSCME) COUNCIL 79,<br><br>*Plaintiff,*<br><br>v.<br><br>RICK SCOTT, in his official capacity as<br>Governor of the State of Florida,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant hereby

propounds upon Plaintiff American Federation of State, County and Municipal Employees

Council 79 the following Requests for Production of Documents and Tangible Things. Plaintiff

is requested to produce and/or permit Defendant to inspect and copy each of the requested

documents that may be in the Plaintiff's possession, custody, or control, or those which are in the

possession, custody, or control of Plaintiff's attorneys, agents, or representatives. Pursuant to

Rule 34(b)(2)(A) and the parties' agreement, Plaintiff's responses to these Requests for

Production must be provided within twenty-one days of service.  Production of documents

should be made to  to Office of the General Counsel (Room 209), Executive Office of the

Governor, The Capitol, 400 South Monroe St., Tallahassee, Florida 32399, or at any other

location and time to which counsel mutually agree.

1

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.      "Plaintiff" and/or "AFSCME" refer to the American Federation of State, County, and Municipal Employees Council 79 and all subdivisions and instrumentalities thereof. The terms "Plaintiff" and/or "AFSCME" also include all persons who are officials, employees, agents, or representatives of Plaintiff.

2.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made. Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information,

including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

     3.     "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

     4.     The words "you," "yours," and/or "yourselves" means Plaintiff American Federation of State, County, and Municipal Employees Council 79 an any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Plaintiff.

     5.     "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association, or any other entity.  "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

     6.     The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and "including without limitation" and shall not indicate limitation to the examples or items mentioned.

     7.     The singular shall include the plural and vice versa; the terms of each word shall be construed to include its plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive

8.   The root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

9.   The word "each" shall be construed to include "every" and vice versa.

10.   The word "any" shall be construed to include "all" and vice versa.

11.   The present tense shall be construed to include the past tense and vice versa.

12.   The masculine shall be construed to include the feminine and vice versa.

13.   The word "document" shall mean any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, including, but not limited to: correspondence, emails, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings.

14.   "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

15.   The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

16.   The term "action" shall mean the within case entitled American Federation of State, County, and Municipal Employees (AFSCME) Council 79 v. Rick Scott, in his official capacity as the Governor of Florida, Case No. 1:11-cv-21976-Ungaro, pending in the United States District Court for the Southern District of Florida.

17.   The word "identify", when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information,

4

the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

18.     The term "drug use" means the ingestion, inhalation, injection, use, or coming under the influence of illegal narcotics, including but not limited to amphetamines, cannabinoids, marijuana, tetrahydrocannabinol, hashish, hashish oil, cocaine, hallucinogens, phencyclidine, methaqualone, opiates, barbiturates, benzodiazepines, synthetic narcotics, and/or methadone.

## INSTRUCTIONS

1.     Pursuant to Fed. R. Civ. P. 26(e)(1), these production requests are continuing in nature and Plaintiff shall provide supplemental answers and documents, which will augment or modify any answers contained in Plaintiff's responses.

2.     Each request herein constitutes a request for each document referred to or a true, complete, and legible copy thereof.

3.     Each request seeks documents that are in any way in Plaintiff's possession, custody, or control from any source, wherever situated, including, but not limited to, the files, records, and documents of investigators Plaintiff or its attorneys hired or directed, and all documents to which the Plaintiff has access, including all documents in the possession, custody, or control of contractors, experts, or consultants.

4.     A document is deemed to be in Plaintiff's "control" if Plaintiff or Plaintiff's attorneys have the right to secure the document or a copy thereof from another person or entity having actual possession of the document.

5.     If a requested document was, but no longer is, in Plaintiff's possession, custody, or control, Plaintiff shall identify the document, its current location, and the person who has possession, custody, or control of the document; if such information is unavailable, Plaintiff shall identify the last known location and person who had possession, custody, or control of the document and explain the reason for and circumstances under which the document left Plaintiff's possession, custody, or control.

6.     If Plaintiff does not answer any document request or part thereof, on the basis of privilege, Plaintiff shall provide with respect to each such document the following:

   a. The nature of the document (letter, memorandum, chart, picture, report, etc.);

   b. The number of pages comprising the document and a description of any identifying marks or designations (*e.g.*, Bates numbers) if any, on the document;

   c. The date of the document;

   d. The name(s) of the author(s) and of any recipient(s) of the document;

   e. The name and address of any person who is not included in response to subpart (d) with respect to such document and who has access to or has seen, read, or heard any portion of the material in the document; and

   f. The nature of the privilege asserted.

7.     For each request or part of a request that Plaintiff refuses to answer on grounds of burdensomeness, Plaintiff shall explain in as much detail as possible the basis for its contention.

8.     If Plaintiff objects to any request, or portion of a request herein, Plaintiff must produce all documents covered by the request, or portion of the request, not subject to the objection.  Similarly, if Plaintiff objects to production of a document, Plaintiff must produce the

parts of the document that are not subject to objection, redacting and clearly indicating the parts of the document that are subject to the objection.

9.      Plaintiff shall produce all documents as they are kept in the usual course of business and label them to correspond to the categories in the request.

10.     Plaintiff must produce all responsive documents in their original format.

## REQUESTS FOR PRODUCTION

**Request No. 1:**  Please produce all documents in Plaintiff's possession, custody, or control that Plaintiff will use to contend that Executive Order 11-58 is unconstitutional, either facially or as applied, as well as any documents referring to such documents.

**Request No. 2:**  Please produce all documents in Plaintiff's possession, custody, or control that are related to drug testing by private-sector employers in Florida or nationally, including but not limited to any studies, statistics, policy briefs, policy proposals, polls, legislative briefings, legislative proposals, public papers, position papers, emails, press releases, electronic documents, or letters.

**Request No. 3:**  Please produce all documents in Plaintiff's possession, custody, or control related to public approval or disapproval of drug testing by employers (public or private) including but not limited to public opinion polls.

**Request No. 4:**  Please produce all documents in Plaintiff's possession, custody, or control related to studies, tabulations, or counts of the number and/or percentage of employers (public or private) who engage in drug testing (either pre-employment or during employment).

**Request No. 5:**  Please produce all documents in Plaintiff's possession, custody, or control that constitute contracts between AFSCME and any State agency that was subject to

Executive Order 11-58 at the time of its promulgation.  This request is limited to the last fifteen years.

    **Request No. 6:**  Please produce all documents in Plaintiff's possession, custody, or control that has been, is, or will be provided to or relied on by any expert retained by Plaintiff in this action for the purposes of expert testimony in this action.

    **Request No. 7:**  Please produce all documents in Plaintiff's possession, custody, or control related to drug testing of any AFSCME member.

    **Request No. 8:**  Please produce all documents in Plaintiff's possession, custody, or control related to the effects of drug use.

    **Request No. 9:**  Please produce all documents in Plaintiff's possession, custody, or control related to the incidence and/or prevalence of drug use by (i) AFSCME members, (ii) State employees, (iii) employees in Florida generally, and/or (iv) employees nationally.

Dated: October 3, 2011                Respectfully submitted,

                                        Charles M. Trippe, Jr. (FBN 69760)
                                         General Counsel
                                       Jesse Panuccio (FBN 31401)
                                         Deputy General Counsel
                                       Office of the General Counsel
                                       Executive Office of the Governor
                                       400 South Monroe Street, Room 209
                                       Tallahassee, FL 32399-6536
                                       (850) 488-3494 telephone
                                     (850) 922-0309 facsimile
                                     Charles.Trippe@eog.myflorida.com
                                     Jesse.Panuccio@eog.myflorida.com
                                     *Counsel for Governor Rick Scott*

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 3rd day of October, 2011, I, pursuant to Fed.

R. Civ. P. 5(b)(2)(B), caused a copy of the foregoing Defendant's First Set of Requests for

Production to be served by email to:

Randall C. Marshall (Fla. Bar No. 181765)
RMarshall@aclufl.org
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1108
*Attorney for Plaintiff AFSCME*


Peter G. Walsh (Fla. Bar No. 970417)
pwalsh@stabinski-funt.com
Stabinski & Funt, PA
757 NW 27 Ave.
Miami, FL 33125
Tel: 305-643-3100
Fax: 305-643-1382
*Attorney for Plaintiff AFSCME*
*(Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.)*



Jesse Panuccio

EXHIBIT 6

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| AFSCME COUNCIL 79 | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   11-21976-CV-UNGARO |
| RICK SCOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF FLORIDA | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   ACLU of Florida 4500 Biscayne Blvd. Suite 340 Miami, FL 33137

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit "A," attached hereto.

| Place:  401 N.W. 2nd Avenue, Suite S-516<br>Miami, FL 33128 | Date and Time:<br><br>11/04/2011 9:00 am |
|---|---|

The deposition will be recorded by this method:   _Stenographically._

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   _10/06/2011_

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   RICK SCOTT, IN HIS
OFFICIAL CAPACITY AS GOVERNOR OF FLORIDA   , who issues or requests this subpoena, are:
Jesse M. Panuccio, Executive Office of the Governor, 400 S. Monroe St. Tallahassee, FL 32399
Jesse.Panuccio@eog.myflorida.com  Tel.: (850) 488-3494

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  11-21976-CV-UNGARO

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## **Exhibit A**

## DEPOSITION TOPICS

1.      The ACLU of Florida's knowledge and position on the prevalence of drug testing by either private or public employers in Florida and nationwide.

2.      The ACLU of Florida's knowledge and position on the prevalence of drug use in Florida and nationwide.

3.      The ACLU of Florida's knowledge and position on public approval or disapproval of drug testing by employers in Florida and nationwide.

4.      The ACLU of Florida's knowledge and position on the effects of drug use in the workplace.

5.      The authenticity of documents related to drug testing in the possession, custody, or control of the ACLU of Florida.

# EXHIBIT 7

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| AFSCME COUNCIL 79 | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    11-21976-CV-UNGARO |
| RICK SCOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF FLORIDA | ) |
| *Defendant* | )    (If the action is pending in another district, state where: |
| | )                              ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  ACLU of Florida 4500 Biscayne Blvd. Suite 340 Miami, FL 33137

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit "A" attached hereto.

| Place: 401 N.W. 2nd Avenue, Suite S-516 Miami, FL 33128 | Date and Time:<br><br>             10/26/2011 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

      The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___10/06/2011___

                       *CLERK OF COURT*
                                        OR

         _____            _____
          *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    __RICK SCOTT, IN HIS__
__OFFICIAL CAPACITY AS GOVERNOR OF FLORIDA_____, who issues or requests this subpoena, are:
Jesse M. Panuccio, Executive Office of the Governor, 400 S. Monroe St. Tallahassee, FL 32399
Jesse.Panuccio@eog.myflorida.com  Tel.: (850) 488-3494

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   11-21976-CV-UNGARO

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____ _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# **<u>Exhibit A</u>**

## DEFINITIONS

1.      The singular shall include the plural and vice versa; the terms of each word shall be construed to include its plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive

2.      The root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

3.      The word "each" shall be construed to include "every" and vice versa.

4.      The word "any" shall be construed to include "all" and vice versa.

5.      The present tense shall be construed to include the past tense and vice versa.

6.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made.   Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature

whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.   In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

7.   "Communications" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

8.   The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

## DOCUMENTS TO BE PRODUCED

1.      All documents pertaining to drug testing by private-sector employers in Florida or nationally, including, but not limited to, all studies, statistics, policy briefs, policy proposals, polls, polling data, legislative briefs, legislative proposals, position papers, "white papers," emails, press releases, electronic documents, letters, and correspondence.

2.      All documents pertaining to drug testing by public employers in Florida or nationally, including, but not limited to, all studies, statistics, policy briefs, policy proposals, polls, polling data, legislative briefs, legislative proposals, position papers, "white papers," emails, press releases, electronic documents, letters, and correspondence.

3.      All documents pertaining to public approval or disapproval of drug testing by public or private employers, including, but not limited to, all public opinion polls.

4.      All documents pertaining to studies, tabulations, or counts of the number, amount, and/or percentage of public or private employers that drug test their employees, regardless of whether such drug testing occurs prior to or during employment.