UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-21976-Civ-Ungaro/Torres

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES
(AFSCME) COUNCIL 79,

     Plaintiff,

vs.

RICK SCOTT, in his official capacity as
Governor of the State of Florida,

     Defendant.
_____/

**ACLU OF FLORIDA, INC. AND ACLU OF FLORIDA FOUNDATION, INC.'S REPLY IN SUPPORT OF EMERGENCY MOTION TO QUASH SUBPOENAS**

I.    Introduction

A cursory reading of the Governor's response would lead one to believe that his initial subpoenas were issued in good faith; were narrowly tailored to seek highly relevant information; were then made yet more specific; and that the ACLU acted in bad faith by prematurely filing its emergency motion to quash. Nothing could be farther from the truth. Neither the initial subpoenas nor the follow-up "clarifications" seeks information that is even marginally relevant to a reasonableness inquiry under the Fourth Amendment. Courts have long held that suspicionless urine testing is a search under the Fourth Amendment and that the reasonableness thereof is solely a question of law, not fact. The purported narrowing of the subpoenas to the non-party ACLU-FL is illusory at best.

The undersigned participated in a meet-and-confer call on October 14 with the Governor's counsel regarding the subpoena. Contrary to the Governor's characterization, ACLU-

FL did not just assert objections and a blanket refusal to produce any documents. While noting its objections, ACLU-FL offered to provide documents that are publicly available on its website and responsive to the Governor's request.[1] The undersigned further asked that any narrowing proposal be submitted by noon the following Monday, October 17, so that, if necessary, a motion to quash could be filed with the Court that afternoon.[2] In order to allow the Governor to narrow the subpoenas, the undersigned filed the motion to quash as late in the day as possible. Subsequently, shortly after 4:30 that day, the Governor's counsel sent a letter that purported to narrow the scope of the subpoenas. *See* DE 25-1. ACLU-FL responded to this proposal. DE 25-2. This reply formally addresses the Governor's Response (DE 28), which is in turn based upon DE 25-1.

Under the terms of the Governor's October 17 letter, there is no change to the deposition subpoena. Although he asserts that a deposition will likely focus on authentication of documents and may not be necessary if ACLU-FL agrees to authenticate its documents, DE 25-1 at 4, the fact remains that the terms of the subpoena are significantly broader than mere authentication and include ACLU-FL's "knowledge and position" on employer drug testing and public approval of employer drug testing, as well as the prevalence of drug use and harmful effects of drug use in the workplace. To the extent that this is still the scope of the deposition subpoena, ACLU-FL stands on all of the objections raised in its initial motion to quash.

---

[1] Notably, in response to the motion to quash, the Governor has relied heavily on screen shots of ACLU-FL's website, which include links to several documents, some of which date back to 2000, relating to employer drug testing. *See, e.g.*, DE 28-1, 28-2, 28-5 to 28-10. He also submits information from the National ACLU website. *See* DE 28-11, 28-12. Although the Governor seems to believe that ACLU-FL's information on employer drug testing has been "freely offered until this point," but is now somehow unavailable, DE 28 at 10, these documents are still freely offered on both organizations' websites for the Governor to peruse, if he believes that they are relevant to the claims in this case.

[2] Emergency motions are required to be hand filed. *See* Administrative Procedures, CM/ECF, §5E. The Clerk's office closes at 4:30.

As to the subpoena for documents, the request is now for documents that have been publicly disseminated over the past 16 years.[3] Further, although the request changes some language regarding the categories of information sought, because the definitional scope of the subpoena is so broad, the request is not much narrower than the original. For example, although the Governor replaces the specific requests in the original subpoena for emails, electronic documents, letters, and correspondence with other categories of documents, the definitions section of the subpoena defines "documents" to include electronic mail, electronic documents, letters, and correspondence (including all drafts and non-identical copies), as well as all other communications. DE 21 at 75-76. Similarly, although the Governor eliminates the explicit request in the original subpoena for documents pertaining to public approval of employer drug testing, it still asks for polls and polling data regarding employer drug testing. To the extent that the document subpoena seeks only publicly disseminated documents and no longer seeks documents protected by attorney-client or work product privileges, ACLU-FL withdraws these privilege-based objections. However, the subpoenas to non-party ACLU-FL remain unduly burdensome and should be quashed.

## II. Analysis

### A. ACLU-FL is not a party to this case.

Before engaging in the legal analysis of the narrowed request, one point raised repeatedly by the Governor bears mention here. As reflected in the pleadings and the caption of the case,

---

[3] Although the Governor's October 17 letter specified that the request included documents "publicly disseminated, whether by the ACLU or a third party," DE 25-1 at 43, the Governor's subsequent response to the motion to quash appears to omit documents publicly disseminated by third parties, instead seeking "publicly disseminated documents *created by* either the ACLUFL or a third party," DE 28 at 4. As ACLU-FL noted in its October 19 letter, it would be an impossible task for ACLU-FL to have to contact all of the individuals and organizations with whom it has shared documents in confidence over the last 16 years to find out if those individuals and organizations has disseminated the documents publicly. DE 25-2 at 3.

AFSCME is the plaintiff in this case; the ACLU Foundation of Florida, Inc. is its counsel. Despite the Governor's repeated assertions otherwise, DE 28 at 6-7, 12-13, ACLU-FL simply is not a party here. Indeed, in the press release the Governor cites as the smoking gun showing that ACLU-FL is simply "cleverly plead[ing] its cases so as to always and forever avoid the burdens of discovery in the suits that 'it' brings," DE 28 at 12; while the text does say that ACLU-FL "announced it filed suit in federal court," the very next sentence says that the suit filed in federal court "is *on behalf of the American Federation of State, County and Municipal Employees (AFSCME), Council 79*." DE 28-2 (emphasis added).[4] The Governor's fanciful theory that ACLU-FL is the "real" party in interest is imaginative but not pertinent to ACLU-FL's status as a non-party to the litigation, which weighs against forcing the organization to comply with an unduly burdensome subpoena for irrelevant documents. *See, e.g.*, *EchoStar Satellite v. Viewtech, Inc.*, No. 10-60069, 2010 WL 2822109 (S.D. Fla. July 16, 2010) (noting that in determining whether a subpoena is an undue burden, courts weigh numerous factors – relevance, party's need for the documents, breadth and time period of request, particularity of document description, and burden of production – and emphasizing that "[c]ourts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure").

---

[4]  **Error! Main Document Only.**The Governor's characterization of ACLU-FL's involvement in litigation underscores our initial concern articulated in the Motion to Quash: "The ACLU-FL is an outspoken opponent of Governor Scott's policies and legislative agenda, consistently asserting that many of the policies he advances violate the civil rights and civil liberties of Floridians. These subpoenas from the Governor directed to the ACLU-FL are unreasonable, oppressive, and constitute pure harassment." DE 21 at 2. The Governor now wants the ACLU-FL, as counsel for plaintiff, to bear "the burdens of discovery in the suits that 'it' brings." DE 28 at 12.

### B. Documents regarding private employer drug testing and public approval of drug testing have no relevance to the reasonableness under the Fourth Amendment of public employer drug testing.

The Governor has failed in his response to demonstrate the relevance of his subpoena requests for documents and information about private employer testing and public approval of that testing to the claims at issue. *See Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y 2011) (noting that burden of demonstrating relevance is on party issuing subpoena to nonparty). This is because the Fourth Amendment standard of reasonableness limits only government actors. Any comparison to what the constitution leaves private actors free to do is irrelevant. Numerous courts have recognized this distinction between public and private actors. Numerous courts have also recognized the irrelevance of the frequency or public approval of suspicionless employer drug testing in the private sector for purposes of evaluating suspicionless government drug testing.

For example, in *Lebron v. Wilkins*, No. 6:11-cv-01473-Orl-35DAB (M.D. Fla., October 24, 2011) (submitted as supplemental authority at DE 29-1), the district court noted the extensive case law recognizing that suspicionless urinalysis intrudes upon reasonable expectations of privacy and, in light of this precedent, "decline[d] the State's invitation ... to review current private organizations' practices or public opinion polls to conclude that there no longer exists a reasonable expectation of privacy against state intrusion via urinalysis drug testing. Private employers are not constrained by the limits of the Fourth and Fourteenth Amendment in this regard." DE 29-1 at 14 and n.5.[5] Similarly, in *Ga. Ass'n of Educators v. Harris*, 749 F. Supp. 1110, 1115 (N.D. Ga. 1990), the district court also "f[ou]nd[] defendants' numerous references

---

[5] In *Lebron*, the State defendant was represented by, among others, counsel from the Executive Office of the Governor in this case. Essentially, on behalf of the State defendant, the Governor's counsel made the same argument in *Lebron* as the Governor makes here.

to the practices of private sector employers irrelevant. Because private sector employers are permitted to drug test their employees, defendants argue, the state of Georgia will become a 'dumping ground' for addicts if it cannot do the same. Unlike private-sector employers, however, the state of Georgia and its subdivisions must comply with the fourth amendment, and ... enforcement of the [law requiring suspicionless drug testing of applicants for state employment] would make such compliance impossible." *Id.* at 1115. *See also Am. Fed. of Teachers v. Kanawha County Bd. of Education*, 592 F. Supp. 2d 883, 892 (S.D. W.Va. 2009) ("Private employers are free to search their employees because the Fourth Amendment does not apply to searches by private parties, absent governmental involvement.") (citation and internal quotation marks omitted).

Contrary to the Governor's position, the opinions arising from California's Prop 8 litigation, *Perry v. Schwarzenegger*, 264 F.R.D. 576 (N.D. Cal. 2009), *mandamus granted*, 591 F.3d 1147 (9th Cir. 2010), support the ACLU-FL's Motion to Quash on the grounds of relevance.[6] The documents sought from the ACLU, a non-party, were found relevant in *Perry* only as to the question of invidious purpose central to an equal protection claim: "[k]ey in this regard is the extent to which the requested discovery could be relevant 'to ascertain the purpose' of Prop. 8. Legislative purpose may be relevant to determine whether, as plaintiffs claim, Prop 8 violates the Equal Protection Clause." 264 F.R.D. at 582 (citation to record omitted). But purpose or state of mind has nothing to do with a Fourth Amendment analysis, the issue here. *See Whren v. U.S.,* 517 U.S. 806 (1996).

Although the Governor suggests that the ubiquity of drug testing in the private sector would weaken the reasonableness of a public employee's expectation of privacy, none of the

---

[6] The ACLU-FL withdraws any objections based on a limited First Amendment privilege that it may have asserted in its Motion to Quash.

cases cited in his response involving drug testing proceed under such a theory. Rather, all of them look to social expectations of privacy only to determine that urinalysis is a search, and not whether the search is reasonable. As to the reasonableness of that search, rather than referencing statistics or common practice in the private sector, or public opinion about drug testing generally, the cases look instead to the particular employees subject to testing to see if they also contend with other intrusions on their privacy that make drug testing seem like less of an intrusion.

For example, in *Skinner v. Ry. Labor Executives Ass'n*, although the Court noted that obtaining and examining physical evidence may be a search "if doing so infringes an expectation of privacy that society is prepared to recognize as reasonable," 489 U.S. 602, 615 (1989), it next explained that under this standard, urinalysis is a search:

> There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed its performance in public is generally prohibited by law as well as social custom.
>
> Because *it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable*, the Federal Courts of Appeals have concluded unanimously, and we agree, that these intrusions must be deemed searches under the Fourth Amendment.

*Id.* at 617 (internal quotations marks and citation omitted, emphasis added). The Court then determined that the railroad employees had a diminished expectation of privacy because of their participation in a heavily regulated industry. *Id.* at 627-28. All of the other drug testing cases cited by the Governor follow this same pattern of analysis – determining the reasonable expectation of privacy for those in the population being tested without reference to ubiquity of drug testing in the private sector or public opinion of drug testing. *See, e.g.*, *Bd. of Educ. v. Earls*, 536 U.S. 822, 830-32 (2002) (noting the limited privacy interest in the public school environment and the voluntary subjection to regulation by students involved in extracurricular

7

activities, without reference to private school students); *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (finding that invasion of privacy was more substantial than in most drug testing cases because patients in public hospital had reasonable expectation of privacy that test results would not be disclosed to third parties without consent); *Chandler v. Miller*, 520 U.S. 305, 321-22 (1997) (finding that candidates for public office are subject to significant scrutiny that could not justify drug testing where asserted government interest was merely to set a good example, without referencing drug testing for high-profile figures in the private sector); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 656-57 (1995) (noting that the public school students tested, like other public school students, are subject to various physical examinations and procedures without reference to what happens to private school students, and emphasizing student athletes' participation in a highly regulated activity); *Nat'l Treasury Employees Union v. Von Raab*, 389 U.S. 656, 672 (1989) (holding that drug testing of Customs employees involved in interdiction of drugs or carrying firearms have diminished expectation of privacy because evaluation of their judgment and dexterity is necessary for successful performance of duties without reference to requirements for private employees). *See also Int'l Bhd. of Teamsters v. Dept. of Transp.*, 932 F.2d 1292, 1300 (9th Cir. 1989) (in analyzing suspicionless drug testing of truck drivers mandated by government regulation, focusing on "the incremental decrease in privacy caused by the search relative to the existing privacy expectations of the drivers," and noting the substantial federal regulation that drivers were subject to apart from drug testing).

Whether or not the Governor's proposed drug testing of State employees is constitutional under the Fourth Amendment cannot turn on public opinion surveys or private employer testing since there is no constitutional requirement of reasonableness for private searches or individual

opinions. The constitutionality of a law simply does not turn on public opinion or popular practice:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

*West Virginia State Bd. of Education v. Barnette*, 319 U.S. 624, 638 (1943). *See also* Hon. Justice Clarence Thomas, *Judging*, 45 U. Kan. L. Rev. 1, 4 (1996) (arguing that if judges allow their "decisions to be guided by popular sentiment and group rights and demands, then the Constitution will be nothing but a malleable, transparent barrier to majoritarian desires"); Sandra H. Johnson, *End-of-Life Decision Making: What We Don't Know, We Make Up; What We Do Know, We Ignore*, 31 Ind. L. Rev. 13, 25 (1998) ("Generally, public opinion polls have not been persuasive when courts were dealing with issues of fundamental constitutional rights. Opinion polls have been labeled as being too uncertain because they are based on temporary opinions which are continually swayed by political activists."). If the Governor's theory held, and such surveys of private employers and public opinion did inform the constitutional analysis of whether government drug testing was constitutional, then it would indeed be "passing strange" for the Supreme Court never to have commented on the prevalence of drug testing in the private sector or public opinion of such drug testing in its twenty-plus years of special needs jurisprudence, having revisited this issue numerous times. Ultimately, if the Governor wants to pursue his relevancy argument, he will have to do so at the Supreme Court.

### C. The subpoenas, even "limited" to documents publicly disseminated over the last 16 years, impose an undue burden on ACLU-FL.

The subpoenas, as interpreted through the Governor's letter (DE 25-1) and response (DE 28), continue to represent a significant financial and workplace burden to the ACLU-FL. *See* Marshall Supplemental Declaration, Exhibit 10, attached hereto (outlining thousands of dollars of costs in order to comply with the "narrowed" subpoenas along with substantial and material disruption of the ACLU-FL's business).

Because the documents sought are irrelevant, any burden imposed by the subpoenas is by definition excessive.[7] *See Belinda K. v. Baldovinos*, No. C10-02507, 2011 WL 3740835, at 2 n.7 (N.D. Cal. Aug. 23, 2011).

Wherefore, the ACLU-FL urges the Court to quash the Governor's subpoenas.

---

[7] Under Rule 45 of the Federal Rules of Civil Procedure, courts should "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" with a subpoena. *See Miami-Dade County v. Johnson Controls, Inc.*, No. 10-20881-CIV, 2011 WL 1548969, at *3-*4 (S.D. Fla. Apr. 21, 2011) (where nonparty had submitted affidavit demonstrating substantial costs incurred in responding to subpoena, requiring party who issued the subpoena to pay the nonparty's costs of compliance). Thus, if the Court permits the Governor's subpoenas, given ACLU-FL's uncontested declarations demonstrating the substantial costs to the organization of complying even with the narrowed subpoena, the Governor should be required to pay ACLU-FL's costs of producing the requested documents.

10

Dated:  October 26, 2011	Respectfully Submitted,

            */s/ James K. Green*
            James K. Green, Esq.
            JAMES K. GREEN, P.A.
            Suite 1650, Esperante
            222 Lakeview Ave.
            West Palm Beach, FL  33401
            Florida Bar No.:  229466
            (561) 659-2029
            (561) 655-1357 (facsimile)

            */s/ Randall C. Marshall*
            Randall C. Marshall, Esq.
            Legal Director
            American Civil Liberties Union Foundation of Florida, Inc.
            4500 Biscayne Blvd., Ste. 340
            Miami, FL  33137
            Florida Bar No.:  181765
            (786) 363-2700
            (786) 363-1108 (facsimile)

            COUNSEL FOR ACLU-FL

CERTIFICATE OF SERVICE

I certify that on this 26th day of October, 2011, a true and correct copy of the foregoing was served by the Court's CM/ECF Notice of Electronic Filing system on all counsel or parties of record:

Charles M. Trippe, Jr., General Counsel
Jesse M. Panuccio, Deputy General Counsel
Michael M. Sevi, Assistant General Counsel
Executive Office of the Governor
The Capitol, Room 209
400 South Monroe Street
Tallahassee, FL 32399-6536
Tel: 850-488-3494
Fax: 850-922-0309
*Attorneys for Defendant Governor Rick Scott*

Randall C. Marshall
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel: 786-363-2700
Fax: 786-363-1108
*Attorney for Plaintiff AFSCME*

Peter G. Walsh
Stabinski & Funt, PA
757 NW 27 Ave.
Miami, FL 33125
Tel: 305-643-3100
Fax: 305-643-1382
*Attorney for Plaintiff AFSCME (Cooperating Attorney for the American Civil Liberties Union Foundation of Florida, Inc.)*

James K. Green, Esq.
JAMES K. GREEN, P.A.
Suite 1650, Esperante
222 Lakeview Ave.
West Palm Beach, FL 33401
(561) 659-2029
(561) 655-1357 (facsimile)
*Attorney for Non Party ACLU of Florida, Inc., and ACLU Foundation of Florida, Inc.*

            */s Randall C. Marshall*